**LOKER LAW, APC**
Matthew M. Loker, Esq. (279939)
matt@loker.law
Charles B. Cummins, Esq. (354861)
charles@loker.law
132 Bridge Street
Arroyo Grande, CA 93420
Telephone: (805) 994-0177
Facsimile: (805) 994-0197

*Attorneys for Plaintiff*,
Jennifer Jones

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JENNIFER JONES,** | **Case No.:** |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.** |
| **STEEL RIVER SYSTEMS, LLC; AND TRANS UNION, LLC,** | |
| Defendant. | **JURY TRIAL DEMANDED** |

LOKER LAW, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

LOKER LAW, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

## INTRODUCTION

1. The United States Congress has also found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. As such, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. JENNIFER JONES ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of STEEL RIVER SYSTEMS, LLC ("Steel River") and TRANS UNION, LLC ("Trans Union") with regard to Defendants' unauthorized and unlawful credit inquiry.

3. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

5. Unless otherwise stated, all the conduct engaged in by Defendants took place in California.

///

///

CASE NO.:                 **1 OF 9**        *Jones v. Steel River Systems, LLC, et al.*
**COMPLAINT**

6. Any violations by each Defendant were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

7. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant's named.

## JURISDICTION AND VENUE

8. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331; and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA").

9. This action arises out of Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA").

10. Because Defendant conducts business within the State of California, personal jurisdiction is established.

11. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial district at all times relevant.

## PARTIES

12. Plaintiff is a natural person who resides in South Lake Tahoe, California, whose credit report was affected by an unauthorized inquiry.

13. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

14. Defendants are each a "person" as that term is defined by 15 U.S.C. § 1681a(b).

15. Steel River is a debt collections agency operating from the State of Illinois.

16. Trans Union is a corporation located in the State of Pennsylvania.

///

LOKER LAW, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

17. Trans Union is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

18. Plaintiff is informed and believes, and thereon alleges, that Defendant acquired Plaintiff's credit information through an unauthorized inquiry of Plaintiff's "consumer report" as that term is defined by 15 U.S.C. § 1681a(d)(1).

## FACTUAL ALLEGATIONS

19. At all times relevant, Plaintiff is an individual residing within the State of California.

20. In 2012, a fraudster obtained a line of credit and a $40,000 loan from VyStar Credit Union ("VyStar"), utilizing Plaintiff's personal identifying information (the "Account").

21. Plaintiff did not apply for these loans nor did Plaintiff authorize anyone to do so on her behalf.

22. On June 18, 2012, upon alert from the United States Secret Service, Plaintiff discovered the fraud.

23. Plaintiff contacted the El Dorado Sheriff's Department on June 18, 2012.

24. Plaintiff obtained a police report from the El Dorado County Sheriff's Department, Case #EG1205222, dated June 18, 2012.

25. Thereafter, on June 19, 2012, Plaintiff completed an FTC Identity Theft Victims' Complaint and Affidavit.

26. Thereafter, Plaintiff immediately contacted VyStar via written correspondence to dispute the Account, informing VyStar that Plaintiff is the victim of identity theft with respect to the Account, included supporting documentation, and requested the VyStar immediately absolve her of any and all charges on the account.

27. Plaintiff also took further steps in an effort to protect herself from further fraud.

///

LOKER LAW, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

28. For example, Plaintiff froze her credit with Experian; Equifax; and, Trans Union.

29. Plaintiff also submitted telephonic disputes to Experian; Equifax; and, Trans Union during this process.

30. While these disputes were pending, Plaintiff further investigated steps she could take to protect herself.

31. Plaintiff was initially relieved when she received correspondence from VyStar dated July 2, 2012, wherein VyStar acknowledged the fraudulent nature of the account and allegedly "locked" this account.

32. While Plaintiff believed she was absolved of the fraud, she unfortunately learned on or about January 13, 2023, via written correspondence from Steel River, that VyStar assigned, placed, or otherwise transferred Plaintiff's alleged debt to Steel River Systems, LLC ("Steel River").

33. From this correspondence, Plaintiff was informed that VyStar transferred the debt to Steel River on December 19, 2022 – over 10 years after VyStar acknowledged the fraudulent nature of the account.

34. On January 23, 2023, January 25, 2023, and January 27, 2023, Plaintiff attempted multiple times to telephonically dispute the validity of the debt with Steel River directly. Unfortunately, Plaintiff was unable to reach an employee of Steel River and was instead forced to leave telephonic messages.

35. On February 20, 2023, Plaintiff transmitted written correspondence to Steel River to dispute the validity of the debt with Steel River. Plaintiff included in her correspondence a narrative summary, as well as supporting documentation.

36. Unfortunately, Steel River once again failed to respond to Plaintiff, and on March 27, 2023, Plaintiff once more attempted to reach Steel River telephonically.

///

37. This time however, Plaintiff was able to speak to a supervisor who confirmed with Plaintiff that Steel River had received the dispute correspondence and verbally assured Plaintiff that the account had been closed. Plaintiff requested that Steel River provide Plaintiff with documentation indicating the same, the Steel River employee-supervisor refused to provide any such written documentation.

38. Plaintiff was initially relieved when she learned that Steel River honored Plaintiff's dispute regarding the debt and ceased pursuing payment on it.

39. However, Plaintiff's relief was short-lived when Plaintiff discovered that on February 3, 2023, Steel River submitted an inquiry to Trans Union, allegedly for the permissible purpose of "collection."

40. On information and belief, Plaintiff understands that Steel River submitted such an inquiry for the purposes of collecting on the aforementioned VyStar account.

41. At the time of the inquiry, Plaintiff's Trans Union report was, or should have been, "frozen."

42. Steel River's inquiry for Plaintiff's consumer report falls outside of the delineated permissible purposes outlined in 15 U.S.C. § 1681b and is therefore in violation of that section of the FCRA.

43. Plaintiff's anxiety; frustration; stress; lack of sleep; nervousness; anger; and, embarrassment continues to this day because this inquiry mischaracterizes Plaintiff as someone that avoids Plaintiff's financial obligations and significantly harms Plaintiff's credit score.

44. On February 2, 2024, Plaintiff directly disputed the validity of the inquiry with Trans Union, requesting that they remove the inquiry on the basis that it was the result of the fraud perpetrated against Plaintiff.

LOKER LAW, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

45. This February 2, 2024 dispute contained a narrative summary, as well as supporting documentation consisting of corroborating correspondence from the United States Secret Service and a partial copy of a Complaint filed against VyStar regarding the aforementioned transfer to Steel River. This Complaint was filed in El Dorado County Superior Court, case No. 23CV0688.

46. Unfortunately, on March 22, 2024, Plaintiff received an updated consumer report from Trans Union, which still reflected the February 3, 2023 inquiry from Steel River.

47. Immediately after receiving this March 22, 2024 consumer report, Plaintiff contacted Trans Union's Fraud Department to inquire as to why the inquiry was not removed.

48. Upon calling Trans Union's Fraud Department on March 22, 2024, Plaintiff learned from a Trans Union employee that despite Plaintiff's thorough dispute, Trans Union refused to remove the inquiry unless Plaintiff further submitted an "Inquiry Deletion Letter" from Steel River, with an additional letter from Plaintiff authorizing the deletion of the inquiry.

49. Plaintiff thereafter immediately endeavored to contact Steel River directly to request such documentation.

50. Unfortunately, despite Plaintiff's immediate and multiple attempts to contact someone at Steel River, it was not until March 27, 2023 until she was able to reach an employee.

51. Further compounding Plaintiff's frustration and misery, Plaintiff was told by a Steel River employee-supervisor that Steel River would refuse to provide the documentation required by Trans Union.

52. Thus, despite clear and direct communication from Plaintiff to Steel River, indicating the simple resolution to have the inquiry removed by Trans Union, Steel River has refused to provide such required documentation.

LOKER LAW, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

53. Further, despite Trans Union having received sufficient documentation indicating that the Steel River inquiry was for an impermissible purpose, Trans Union has refused to remove the inquiry.

54. Thus, as a direct and proximate result of Defendants' willful action and inaction, Plaintiff has suffered actual damages, including, but not limited to, reviewing credit reports, preparing and mailing dispute letters, attorneys' fees, loss of credit, loss of ability to purchase and benefit from credit, increased costs for credit, mental and emotional pain and anguish, and humiliation and embarrassment of credit denials. Plaintiff has further spent countless hours and suffered pecuniary loss in attempting to correct Defendant's inaccurate and derogatory information, without success.

55. Based upon the discussion above, Plaintiff contends that punitive damages are available to Plaintiff.

56. To make such an inquiry, despite the fraudulent nature of these account, shows that Defendants took action involving an unjustifiably high risk of harm that was either known or so obvious that it should be known.

57. Since Plaintiff's efforts to be absolved of the impermissible inquiry were unsuccessful, Plaintiff was required to bring this action to finally resolve Plaintiff's remaining disputes.

**CAUSES OF ACTION CLAIMED BY PLAINTIFF**

**COUNT I**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT**

**15 U.S.C. §§ 1681-1681X (FCRA)**

**[AGAINST ALL DEFENDANTS]**

58. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

LOKER LAW, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

59. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

60. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from each Defendant.

61. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100 and not more than $1,000 and such amount as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against each Defendant for:

- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against Defendant for each incident of willful noncompliance of the FCRA;

- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against Defendant for each incident of willful noncompliance to the FCRA;

- An award for costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), against Defendant for each incident of negligent noncompliance of the FCRA;

- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA;

- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against Defendant for each incident of noncompliance of the FCRA;

- Punitive damages according to proof as to the FCRA;

- Any and all other relief the Court deems just and proper.

### TRIAL BY JURY

62. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: May 23, 2024

Respectfully submitted,

**LOKER LAW, APC**

By: ___/s/ Matthew M. Loker___

MATTHEW M. LOKER, ESQ.
ATTORNEY FOR PLAINTIFF